# Mounts' Appeal.

A. by his will provided as follows: "Also I will that my farm be rented at public outcry by my executor, and the proceeds thereof applied to the support of my beloved wife during her natural life and the surplus of rent, if any, be paid out as hereafter directed." The farm was afterwards sold by the executor for the payment of debts and the balance of the proceeds, after such payment, were invested. The widow received the interest thereon for several years, but then went to live with her daughter, by a former husband, and took only a small part of the accruing interest from the executor, leaving the rest in his hands. The widow afterwards died testate, leaving all her property to her daughter. Upon the settlement of A.'s executor's account, the balance of accumulated interest was claimed by the said daughter, and also by the representatives of A. (children by a former wife.) The executor testified, *inter alia*, that shortly before the widow's death he wanted her to take the interest which he then had in his hands, but she refused, and requested him first to pay certain bills out of it, and to give the balance to her daughter.

*Held*, that under the above recited clause in A.'s will, and in view of the evidence of appropriation of the fund by the widow, it passed to her daughter under her will, although allowed to remain in the possession of A.'s executor.

*Held*, further, that it was not necessary to prove an express agreement, between the widow and her daughter, for the support of the former, in consideration of the subsequent receipt by the daughter of said balance of interest.

October 21st, 1884. Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. PAXSON, J., absent.

APPEAL from the Orphans' Court of *Washington county:* Of October Term, 1884, No. 67.

Appeal from a decree of said court reversing the report of an Auditor appointed to make distribution of the fund in the hands of N. Bearly, executor, under the last will and testament of John Patterson, deceased.

John Patterson, a farmer of Washington county, died testate, in 1861, leaving to survive him a widow, Jemima Patterson, his second wife, and several sons and daughters, children of his first wife. The said Jemima Patterson was a widow with two children when he married her, one of whom afterwards died, and the other, Mrs. Martha Mounts, survived both John Patterson and her mother.

By his will, the decedent, after leaving his wife a house

and certain personal property, provided as follows: "Also I will that my farm be rented at public outcry and the proceeds thereof be applied to the support of my beloved wife during her natural life, and the surplus rent, if any, be paid out as hereinafter directed."

The farm was afterwards sold by the executor under order of court, for the payment of decedent's debts, and the balance of the money received therefor, after payment of said debts, amounting to $1,799.79. was placed at interest. In 1866, the widow went to live with her daughter, Martha Mounts, and remained there until August, 1881, when she died, leaving a will whereby she bequeathed and devised her entire estate, after deducting funeral expenses, to her daughter.

On March 10th, 1883, Mr. Bearly, as executor of John Patterson, filed his second and final account, showing a balance of $2,125.26 in his hands, and John Murdoch, Esquire, was appointed Auditor to report distribution. Before him Martha Mounts claimed, through her mother's executor, the balance of unexpended interest on the $1,799.76, set apart for the support of the widow under the decedent's will, the widow having used only a small part of said interest during her lifetime, and having left the remainder in the hands of the executor.

Mrs. Mounts claimed, first, on the ground that the will of John Patterson gave this income to his widow absolutely and it became part of her estate and passed, therefore, under her will to her daughter; second—on the ground that the widow made an express contract with claimant, for support, agreeing that at her death all of said income should go to claimant for such support. The fund was also claimed by the representatives of John Patterson as part of his estate.

Mr. Bearly, the executor, testified before the Auditor as follows: "The widow, after death of her husband and after the lapse of some time, didn't lift near the amount of interest that was coming to her, alleging that there was an arrangement between her and her daughter, some way, by which she was to be cared for, and she drew what was necessary for her support, and what was left, after her death, was to go to her daughter in consideration of her support. I wanted her to lift interest and give it to her daughter or do what she pleased with it. She replied that if she gave it to her daughter, the daughter might die before her and leave her without support, and if she took it herself she might lose it. The interest was ready for her, whenever she wanted it. After her husband's death she lived with her daughter, Martha Mounts. They lived together before the daughter's marriage. She lived with her up to time of her death. I had conversa-

tion with her just shortly before her death, and I wanted her to take the interest; she refused, and wanted me to attend to the funeral expenses and doctor's bill, and pay residue to her daughter. She spoke of Dr. Kelly's bill in particular. I had wanted her to take money and pay it, but she wouldn't do that; she told me to pay this bill out of money coming to her out of estate of her husband."

The Auditor reported that "As to the first ground it is sufficient to say that, as we understand the intention of the testator, the income could not go into the widow's estate, but remained part of the estate of the testator until actually severed and applied to her support." He however allowed Mrs. Mounts' claim on the second ground, finding from the evidence an express agreement between the parties, by which Mrs. Mounts was to support her mother during the latter's life, and at her death to receive the balance of interest contended for. The Auditor accordingly awarded said balance to Mrs. Mounts.

Exceptions filed to this report by the representatives of John Patterson were sustained by the court, on the ground that no express contract was proved by the evidence, HART, P. J., delivering the opinion, and a decree was entered awarding the fund in dispute to the exceptants: whereupon Martha Mounts took this appeal, assigning for error the decree of the court.

*Birch,* (with whom was *Sprowls,*) for appellants.—The vital question in the case is not so much whether there was an express contract between Mrs. Patterson and Mrs. Mounts for the former's support, but whether there was an appropriation by Mrs. Patterson of the interest in the hands of the executor. That there was such an appropriation clearly appears from the evidence.

*Freeman Brady, Jr.* (with whom were *James P. Sayer & J. M. Patterson,*) for appellees.

Mr. Justice GORDON delivered the opinion of the court, November 13th, 1884.

When John Patterson, by his will, directed that after his death his farm should be rented and the proceeds, or so much thereof as might be necessary for that purpose, should be appropriated to the maintenance of his widow during her life, he did not intend that this appropriation should be used merely as a supplement to her own industry, or to the charity of her child or children. The bequest was to be measured by the reasonable cost of her living, and it can matter nothing to

the estate how she obtained that living. Had the farm been rented as was intended by the testator, she could have drawn upon the products to the amount of the bequest, and this whether she supported herself or employed some other person so to do, and in either case the matter was not one that concerned the present appellees. Now, it so turned out that, after the testator's death, it became necessary to sell his farm for the payment of his debts, and the balance of the fund so raised, after the debts were satisfied, and the necessary expenses paid, was put at interest, in order to supply, in part at least, the provision made for the widow. As this interest was certainly not more than sufficient for her support, we may take it as without dispute that she might have, during her lifetime, received and appropriated to her own use the whole of it, and that without the necessity of accounting to any one as to how she used it. But instead of drawing this money as she might have done, she left it in the hands of Bearly, the executor, and that for the express purpose of her own support and maintenance. Bearly testifies that she did not lift nearly the amount of interest coming to her; that he urged her repeatedly to take it and do what she pleased with it, but this she steadily refused, not because she had abandoned her claim to it, but because her daughter was caring for and supporting her, and in case of her own death she wanted it paid to her daughter as a consideration for that care and support, but in case of her daughter's death before her own, having then no one on whom she could depend, she must have it in order to provide for herself. Here, then, was an explicit appropriation of this money for her own maintenance. For that purpose, and for that purpose alone, was it allowed to remain as a deposit in the hands of the executor. He knew that she was being supported by her daughter, and that she intended, and had in fact, appropriated the money in his possession to pay for that support, and he, recognizing her undoubted right to dispose of this fund, offered, but a short time before her death, to pay it to her. Had he done so there would have been an end of the matter, though doubtless the money would have gone, just where it must now go, to the appellant. But if Mrs. Patterson had the right to this fund in the hands of the executor immediately before her death, how comes it to pass that she could not dispose of it by her will? Had she then received it and put it in a bank, I suppose no one would have been found to say that she could not so have disposed of it, or that a contract between her and her daughter was at all necessary to enable her so to do. But what material difference does it make that the executor instead of a bank was her depositee? The error of the court below is found in this,

that it made the case to turn on a contract, between the mother and daughter, for maintenance, and when the conclusion was reached that there was no such contract, the appellant was turned out of court. But whether such a contract existed or not was of no special moment, except, perhaps, as it might indicate the intention of the widow; on the other hand, the true question was, as we have already shown, whether she claimed the fund as her own, and had directed its appropriation to her support, or whether she had abandoned it and it had lapsed to the estate of her husband. Thus her intention and what she said and did concerning the bequest, were what the court ought to have considered, and not her contracts, which could not affect her husband's estate. But that she regarded this money as her own, and did make an express appropriation of it, and that just before her death, is proved by Mr. Bearly. He says that shortly before her death he wanted her to take the interest, which she refused to do, but requested him to attend to her funeral expenses and the doctor's bill, and pay the residue to her daughter. This surely leaves nothing open for discussion either as to what she intended or what she did in the way of a disposition of the bequest of her husband, and, as to this, even the slightest hesitancy is removed by the fact that she provided by a will which she made shortly before her death, that Mrs. Mounts, the appellant, should be her sole legatee, thus putting out of the way every obstacle that might otherwise have arisen in the execution of her previously expressed intention.

We are, therefore, of the opinion that the conclusion reached by the Auditor was the correct one, though we are not altogether prepared to adopt the reasoning on which he founds it.

> The decree of the Orphans' Court sustaining the exception to the claim of Mrs. Martha Mounts, the appellant, is now reversed and set aside, and the distribution made by the Auditor is approved and confirmed; and it is further ordered that the appellees pay the costs of this appeal.