HENRY A. HOUSTON, Trustee under the last Will and Testament of Charles B. Houston, deceased,

*vs.*

CHARLES B. HOUSTON, LAYTON HOUSTON, CAMILLE B. HOUSTON, LETITIA R. HOUSTON, MARY H. McCORMICK, KATE I. WASHBURN, HENRY A. HOUSTON, JR., LYDIA TOADVINE, JOHN M. HOUSTON, ADDIE LEVERAGE, KATE H. LONG, ELIZABETH K. POOLE, ROBERT B. HOUSTON AND ROBERT I. HOUSTON.

*Sussex, September 27, 1922.*

2

*Charles W. Cullen,* for complainant.

*James M. Tunnell,* for Layton and Charles B. Houston.

THE CHANCELLOR: The fifth item of the will gives to the trustee in trust for the exclusive use and benefit of

Charles B. and Layton Houston, three thousand dollars, the same to be invested and, upon the arrival of each at the age of sixteen, to spend one-half of the principal and its income upon each in educating him in such school as the trustee may select. While there is a direction to the trustee in case either boy dies before reaching sixteen, yet the testator makes no provision concerning the length of time the trust shall continue, nor where the balance of the fund shall go in case all is not needed for schooling purposes, nor where it shall go in case the boys should refuse to take the education the testator intended for them.

In *Kelly v. Jefferis, Kellys' Adm'r.*, 3 *Pennewill*, 286, 50 A. 215, 216, it was held that a legacy "for the care of my baby" was vested in the infant immediately upon the death of the testatrix, and was payable to the administrator of the child notwithstanding its death at two and one-half months of age made it impossible to apply the legacy to its care.

In that case the failure of the child to receive the benefit of the legacy was, as observed by the court, through no fault of its own. Whether the failure of the two Houston boys to receive the benefit of an education to the full extent of their great-uncle's gift was due to their own fault, and their case for this reason be distinguishable from the *Kelly Case,* is not clear from the bill. The hearing was on bill and answer, and the material and relevant averments of the answers are, therefore, taken as true. *Chancery Rule* 43. I, therefore, take as the truth, the averments in the answers of Layton and Charles B. Houston, that their mother's illness in the case of the one, and her illness and death in the case of the other, compelled them to leave school. I can readily conceive how the mother's illness might, under certain circumstances, have required the presence at home of Layton, the older boy; and it may also be conceived that her illness and death might, under peculiar circumstances, have necessitated the return home of the younger boy. What the actual circumstances were which compelled them to stop

school upon the illness and death of their mother are not disclosed. The statement in the answer, however, that they were compelled to return for the reasons given, is not put in issue and must, therefore, as the case is presented, be taken as true.

If this be so, then it would follow that the failure to attend school for a longer period, until the fund was exhausted, was through no fault of their own, and *Kelly v. Jefferis, Kelly's Adm'r., supra,* would seem to dispose of the case in favor of the claim of Layton and Charles B. Houston, that they are entitled to the balance of the fund absolutely.

But I am not content to rest my conclusion on this consideration alone. For I am persuaded by the authorities that, whatever may have been the reasons which prompted the boys to discontinue school, they are now entitled to the balance of the fund remaining in the hands of the trustee.

In *Kelly v. Jefferis, Kelly's Adm'r., supra,* it was observed:

"There are other cases in which legacies given for particular purposes, to which they were not applied, have been held to have become vested on the testator's death, and payable to the legatee, without regard to the question whether the beneficiaries were or were not responsible for the non-application of the money as directed."

In support of this, the court cites *Nevill v. Nevill,* 2 *Vern.* 431; *Cope v. Wilmot, Ambler,* 704; and *Mounts' Appeal,* 107 *Pa.* 402. The facts in the two cases from 2 *Vern.* and from *Ambler* make their rulings quite applicable to the pending case.

In *Barton v. Cooke,* 5 *Ves.* 461, the testator directed his executors to pay out of the personal estate the sum of one hundred pounds for the board and education of James Barton until he should be fit to be put out apprentice; and that they should then pay the further sum of one hundred pounds as an apprentice fee for him. He reached the age of nineteen without ever having been put out an apprentice. Why he had not been, does not appear. The Master of the

Rolls in holding that he was entitled to the two sums of one hundred pounds said, "that if a legacy is given for the benefit of an infant in one way, and it cannot be so applied, it may be applied for his benefit in another way."

In *Leche v. Kilmorey,* 1 *Turn. & Russ.* 207, a sum of one thousand and fifty pounds was placed in the hands of agents to purchase a promotion in the army for the plaintiff, then a lieutenant. Plaintiff, after the decease of the donor of the fund, was compelled, from the bad state of his health, to quit the army, the fund never having been used for his benefit. He was held entitled to the fund absolutely. If his bad state of health was such as to make the army permanently impossible for him (a fact upon which the report of the case is silent), it may be that the case would belong to that class of cases where the failure to reap the benefit of the gift was due to no fault of the beneficiary.

In *Noel v. Jones,* 16 *Sim.* 309, there was a bequest of eight hundred pounds to trustees to pay and allow the same in and upon the education of Francis Noel and to pay the residue of the moneys which shall remain after satisfying the purposes of the will, to the testator's son. A bill was filed on behalf of Francis Noel, who was then an infant, for the payment of the eight hundred pounds absolutely. The Vice Chancellor in granting the prayer of the bill said, "that there is not so much particularity in the words (of the bequest) as to take the case out of the ordinary rule; which is that, where a legacy is given for the benefit of an infant in a particular mode, it must be taken to be a general legacy."

In *Couper v. Mantell,* 22 *Beav.* 231, the testator gave authority to trustees to raise and pay out of the residuary estate "any sum or sums of money not exceeding six hundred pounds, to be applied in the purchase or procuration of a church preferment for the benefit of my nephew, James Hammond." The nephew was of age and in Holy Orders, but died before any part of the six hundred pounds had been raised and applied as authorized by the will. He

left no next of kin, and the question was, whether the six hundred pounds fell into the residue or passed to the Crown. It was held that the will created simply a *power* in the trustees, reposing a discretion in them, both as to the propriety of raising the money and as to the amount. The language of the will is so dissimilar to that found in the will now before me, that the case is not in point here. I refer to it only because of the observation of the Master of the Rolls, that "if this had been a gift of six hundred pounds to James Hammond for the purpose of purchasing him church preferment, it would be a trust for him and that he would take it." It not being such, but a trust attended with an uncontrolled discretionary power in the trustees, James Hammond himself could not, as observed by the Master of the Rolls, have said: "I do not intend to go into the church—pay me the legacy." And so the sum remained in the residue.

In the Sixth Edition of *Jarman on Wills, Vol.* 1, 397 (*367), is found the following:

"Where the purpose of the gift is the benefit solely of the donee himself, he can claim the gift without applying it to the purpose, and that, it is conceived, whether the purpose be in terms obligatory or not. Thus if a sum of money be bequeathed to purchase for any person a ring, * * * or for his maintenance and education, or to bind him apprentice, * * * the legatee may claim the money without applying it or binding himself to apply it to the specified purpose."

In holding as I do, that the fund remaining in the hands of the trustee now belongs to the two beneficiaries named in the fifth item, it is not necessary for me to go the full length which the rule announced by Mr. Jarman, or the language employed in the cited cases, would appear to justify. Underneath these expressions of the law as found in Jarman and in the authorities above referred to, lies the fundamental idea, expressed as it is in *Roper on Legacies, Vol.* 1 (1st American Edition), 430, that "it is considered that the property was intended for the legatee at all events, and that the mode directed for its application

was merely a secondary consideration, and independent of the gift." The will now before me for construction does not leave this fundamental idea, however, to be merely inferred from general principles or considerations, as it is in all the cases cited. Rather, by its own positive language, it shows such to have been the plain intent of the testator; for it will be observed that the trust is first declared by the testator to be "for the exclusive use and benefit of Charles B. Houston and Layton Houston." In view of this express provision made by the testator, there is no escape from the proposition that the rest of the item which speaks of educating them, is secondary to and independent of the gift. The language of the will, therefore, saves the necessity of going the full length which the rule announced by Mr. Jarman and the language of the cited cases would seem to justify.

It seems clear that the testator meant this fund to be for the benefit of the two boys in any event, but, realizing the desirability of spending it for an education, he provided that a trustee should direct and oversee their schooling, and to that end he empowered the trustee to spend all of it if necessary. If it was not all so spent, the exclusive use and benefit of it, or its balance, nevertheless continued to be theirs.

The legacy given by the fifth item was not given direct to the beneficiaries. The machinery of a trust was created through which they were to enjoy it. So long as the boys were attending school, the trust was an active one. And it may be conceded, that while they so continued at school they had no right to possession of the money as against the trustee. The testator fixed no time limit for the termination of the schooling. While the question of when such limit of time is to be fixed has not been raised, yet it lurks in the case. Both boys have now reached manhood, being respectively twenty-nine and nearly twenty-two years of age. They regard themselves as having done with school and the trustee so regards them. Certainly the older one

may be regarded conclusively as having completed his schooling. In *Legatees of McDowell v. Black, Riley, Eq.* 152, the Chancellor held that in the absence of a showing that the period of education was being continued after reaching majority, he would adopt the rule that it ended upon the attaining of the age of twenty-one. Whether such be a proper rule, I need not decide, for here no one contends against the fact that the period of attending school has terminated. I take such fact, therefore, to be true.

This being so, the trustee has no longer any active duty to perform with respect to the fund. His trust has now become passive, for such is the result when the purpose of the creation of the trust has been fulfilled, or the trustee has no further duty to perform. In such case the absolute legal estate will vest in the beneficiary by operation of law. 39 *Cyc.* 224, 225.

The balance in the hands of the trustee now stands, therefore, solely for the exclusive use and benefit of the two beneficiaries. Its ultimate disposition is to be governed by the principle announced in *Lorton v. Woodward,* 5 *Del. Ch.* 505, where it was held that the bequest of the income of a fund to one and his heirs forever is an absolute bequest of the corpus of the fund itself. Where there is a gift of the income or produce of a fund, without limitation as to time, the rule that such a gift will pass the fund itself is the same whether the gift be made directly to the legatee or through the intervention of a trustee. *Bishop v. McClelland's Ex'rs.,* 44 *N. J. Eq.* 450, 16 *A.* 1, 1 *L. R. A.* 551; *Hartson v. Elden,* 50 *N. J. Eq.* 522, 26 *A.* 561.

It being the opinion of the court that Layton Houston and Charles B. Houston are now entitled to have the balance in the hands of the trustee paid to them absolutely, the next question is, in what proportion shall it be divided? This question is answered by the manifest intent of the testator, that the fund was originally intended for them in equal moieties. Therefore, the balance remaining in the moiety of Layton Houston, after deducting the expenditures made

for his education, should be paid to him, and the balance remaining in the moiety for the education of Charles B. Houston, after deducting the expenditures in his behalf, should be paid to him. The costs of this proceeding will be paid by the trustee in equal proportions from the sums due Layton and Charles B. Houston.

Let a decree be prepared accordingly.