Doyle et ux., Appellants, *v.* McKean's Estate et al.

286

Argued May 5, 1938.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Abraham Fishkin,* for appellants.

*Edward J. Steiner,* with him *Emanuel D. Jaffe* and
*John F. Steel,* for appellees.

OPINION BY BALDRIGE, J., July 15, 1938:

This appeal involves the interpretation of the will
of Susan Lynch McKean.

The testatrix died June 2, 1900, leaving a husband,
William McKean, and seven children, to wit: Amelia
McKean, Sue McKean Doyle, Eugenia McKean, Jack
McKean, Margaret Schuster, Genevieve Easley, J.
Lynch McKean. She was seized at the time of her
death of certain real estate in Freeport, Armstrong
County. In her will she provided, inter alia, as fol-
lows: "First: I bequeath the house and contents on

High and Seventh Streets to my daughter Amelia as long as she lives as home for herself and father and any of the daughters that remain single, in case of Amelia's death her father still remain with single daughter. Second: At the death of Amelia and father, house and contents to be equally divided among remaining heirs."

The daughter, Amelia McKean, died May 21, 1932, surviving her father and all of her brothers and sisters, except Sue McKean Doyle. On October 20, 1933, Mrs. Doyle and her husband, conveyed all of their interest in the real estate of which the testatrix died seized to Victor Lynch Doyle and Rachel E. Doyle. All of the surviving parties interested in the property above mentioned agreed to its sale for $2,775. Twelve hundred dollars was paid in cash and a mortgage for the balance of the consideration was given to Edward F. Lehmann as trustee. He holds the cash and the mortgage, awaiting the final determination of this suit.

Victor Lynch Doyle and his wife claim the entire fund as Sue McKean Doyle, whose interest they acquired, is the last survivor of the children, and they contend that the words in the will, "remaining heirs," mean those living at the time of the death of the last life tenant.

The appellants presented a petition for a declaratory judgment under the Act of May 22, 1935, P. L. 228 (12 PS §847 et seq.). The learned court below, after carefully tracing the various interests of the different heirs as they shifted from time to time due to the deaths of the several children of the testatrix, determined that the fund in the hands of the trustee should be distributed as follows: Olive Lane, Frank Schuster, Jean Wynn, and Wayne Easley are each entitled to three-twentieths of the fund, or $180; Victor and Rachel Doyle to eight-twentieths, or $480; and that the mortgage held by the trustee be distributed to the parties

in the same proportions as the cash fund, concluding that the words "remaining heirs" refer to those heirs other than life tenants living at the time of the death of the testatrix. We think that was the correct solution of this controversy.

The will was executed prior to the Act of June 29, 1923, P. L. 914 (21 PS §11), which provides that when there is a remainder over under a will after a life estate, the will shall be construed, unless otherwise provided, as meaning the person or persons living at the time of the termination of the life estate. But it expressly states (21 PS §12) that the act shall take effect the 31st day of December, 1923, and shall not apply to wills of persons dying before that date. It, therefore, has no bearing on this case.

Of course, our duty in interpreting this will is to try to ascertain the intention of the testatrix from the language she has used. It is very apparent that her primary purpose was to have the home maintained for the benefit of her husband and daughter, Amelia, or any other single daughter. If an uncertainty exists as to her further intention, the law leans toward equality. The Supreme Court said in *Groninger's Est.,* 268 Pa. 184, 189, 110 A. 465, that "it cannot be contemplated that one would intend to cut off possible surviving grandchildren, from an inheritance given their parent, simply because the latter might happen to die during the continuance of an anterior life estate." In *Edelman's Est.,* 276 Pa. 503, 508, 120 A. 457, it is stated "a construction which causes an heir to be disinherited, or which works an invidious distinction between the heirs, is to be avoided where possible, and, of course, the law always inclines to a construction which makes for a vested rather than a contingent estate."

We are convinced, as the learned court below was, that it was the desire of the testatrix that after the

death of her husband and the last unmarried daughter her estate be divided equally among her children then living and the heirs of any deceased child. Any other construction would result in some of the direct descendants not receiving any, and the appellants receiving all, of the proceeds of the sale of the real estate. We find nothing in the will that indicates the testatrix intended such a preference. On the contrary, it is apparent she wanted to treat all of her children and their children alike.

The rule of construction applied to wills, at least to those not affected by the Act of 1923, supra, is, where a testator directs that after the expiration of a life estate the estate shall go to his heirs, he is understood as meaning the persons who would have so taken at the time of his death and not at the time appointed for their taking, unless a different intent is manifested in the will: *McFillin's Est.*, 235 Pa. 175, 177, 83 A. 620. In *Smith v. Myers*, 212 Pa. 51, 52, 61 A. 573, the court, in construing the words "remaining children" used in a will, said: "The provision that on his death under twenty-one his fourth should go to the 'remaining' children is clearly equivalent to 'other,' not 'then surviving' children." That case bears a similarity to the one in hand. In *Nass's Est.*, 320 Pa. 380, 182 A. 401, the court again pointed out that the rule of construction applied to survivorship refers to the time of the death of the testator, unless a contrary intent appears.

We are convinced that when the testatrix used the expression "among remaining heirs," she meant her heirs other than Amelia and Eugenia, her two unmarried daughters, for whom she had provided life estates. This apparent intention is confirmed by the fourth paragraph of her will, which reads: "All bonds, mortgages and money to remain as they are for five years. Amelia to have full use of the interest till the end of five years, and then said estate shall be divided into equal shares

among my seven children. In case of their deaths without heirs, their share is equally divided among the remaining heirs." There can be no doubt that she intended her personal property to be divided into equal shares among her seven children, who were living when the will was made, five years after her death, during which period her daughter, Amelia, was to have the benefit and use of the interest. If any child died before the expiration of five years and left children, they would take the share of the parent so dying. We think that the will indicated, also, the testatrix's intention to distribute equally her real estate among all of her heirs.

Decree of the lower court is affirmed, at appellants' costs.