DELAWARE TRUST COMPANY, a corporation of the State of Delaware, and M. A. TARUMIANZ, as Trustees under an Indenture of Trust dated the 3rd day of January, 1939,
Plaintiffs,

*vs.*

EDWARD C. DAVIS, JR., Individually and as the remaining Trustee under Indenture of Trust dated the 3rd day of January, 1939, ERIC DAVIS SCHNEIDER, minor son of Sarah Davis Schneider, HERMAN W. SCHNEIDER, administrator of Sarah Davis Schneider, and DELAWARE TRUST COMPANY, a corporation of the State of Delaware, Executor under the Last Will and Testament of Edward C. Davis, Sr., Deceased,
Defendants.

*New Castle, August 9, 1960.*

*Hugh M. Morris,* of Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiffs.

*Henry M. Canby,* of Richards, Layton & Finger, Wilmington, for defendant, Edward C. Davis, Jr., individually and as trustee.

*Daniel L. Herrmann,* of Herrmann & Duffy, Wilmington, for defendants, Eric Davis Schneider and Herman W. Schneider, administrator.

*David F. Anderson,* of Berl, Potter & Anderson, Wilmington, for defendant, Delaware Trust Co., executor.

MARVEL, Vice Chancellor: Plaintiffs, who are two of the present trustees under a trust created by Edward C. Davis on January 3, 1939, have filed this complaint for instructions, naming as one of the interpleading defendants, Edward C. Davis, Jr., both in his capacity as a beneficiary of the trust and as an original trustee named in the 1939 instrument. Also named as such interpleading defendants are Eric Davis Schneider, son of Sarah Davis Schneider, a trust beneficiary prior to her death on April 29, 1959, Herman W. Schneider, administrator of the estate of Sarah Davis Schneider, and Delaware Trust Company, executor of the estate of Edward C. Davis, the grantor of the trust. Edward C. Davis, Jr., and Sarah Davis Schneider were the only children of the grantor, who died on April 12, 1959.

The 1939 trust instrument provided for the setting up of two separate irrevocable trust funds to be known as the "Edward C. Davis, Jr., Trust" and the "Sarah Davis Green Trust",[1] and it is the alleged need for interpretation of the provisions therein made for the benefit of the grantor's two children and their issue which led to the filing of this complaint. Plaintiffs first sought a determination by the Court as to who are indispensable parties to this action, and it having been

---

1. Sarah Davis Green, having been divorced from her first husband, later married Herman W. Schneider.

determined that the children of Edward C. Davis, Jr., have no interest in the Sarah trust, the sole issue now to be decided is the manner in which that part of the trust estate held for Sarah's benefit during her lifetime should be distributed among the interpleading defendants. Answers having been filed by such defendants and the case having proceeded to the discovery stage, this is the Court's opinion as to the substantive rights of the interpleading defendants in the light of the material facts of record.

The item of the trust indenture required to be directly construed by the Court for the purpose of resolving the issues raised by the complaint and answers reads as follows:

"Seventh: If said Sarah Davis Green should die while my son, Edward C. Davis, Jr., is living, then in such case the corpus or principal and all accumulated income of the trust created for her shall be transferred, added to, and become a part of the trust herein created for the benefit of my surviving son, Edward C. Davis, Jr."

Sarah Davis Green having died, leaving her brother, Edward, to survive, it would appear at first glance that no serious question is presented concerning the disposal of the property held in trust for Sarah's benefit during her lifetime. However, by order of this Court entered on October 26, 1956 in Civil Action 715,[2] in which Edward C. Davis, Jr., sought the payment to him of the corpus of that portion of the trust set up for his immediate benefit under the provisions of item fifth of the trust indenture which purportedly authorized such payment in the sole judgment of the trustees during the lifetime of the settlor (provided such beneficiary should attain the age of thirty-five) it was decreed that the then trustees "* * * in their absolute discretion may make or withhold payments of the corpus of the said trust, and the accumulated income thereof, to Edward C. Davis, Jr., notwithstanding the fact that his father, Edward C. Davis, is living."

On May 17, 1957, the trustees having exercised their discretion, Edward C. Davis, Jr., executed a receipt acknowledging that he had

2. *Delaware Trust Company, et al. v. Edward C. Davis, Jr., et al. (Del.Ch.* unreported, October 22, 1956).

received from said trustees the cash and securities therein listed "* * * representing the entire corpus of the said trust in the hands of the Trustees as of May 7, 1957, in full satisfaction of all my right, title and interest in said property." In the same document Edward C. Davis, Jr., also released and discharged the trustees "* * * of and from all actions, suits, accounts and demands whatsoever, for or concerning the said property, or any part thereof * * *".

The Schneider defendants contend that the Edward trust was absolutely extinguished as a result of the above transactions and that the assets of the Sarah trust obviously cannot be transferred to a non-existing trust, *Houston v. Houston,* 20 *Del.Ch.* 1, 175 *A.* 51; *Guaranty Trust Co. v. Cutting,* 130 *Misc.* 856, 225 *N.Y.S.* 407. They seem to concede that had the trustees not acted as a result of the order entered in Civil Action 715, such would not be the case, but the trustees having acted they contend that Edward C. Davis, Jr., has become the victim of his own greed. They conclude that the Sarah trust having thereby failed or become extinguished, a resulting trust has arisen for the joint benefit of Edward C. Davis, Jr., on the one hand and the estate of Sarah Davis Schneider and Eric Davis Schneider on the other. The defendant, Delaware Trust Company, executor of the estate of Edward C. Davis, proposes an alternative theory in the eventuality it is decided that the Edward trust terminated upon the May 1957 payment to Edward C. Davis, Jr., namely that such corpus upon her death thereupon became a part of her father's estate.

The Schneider defendants argue that not only does a trust necessarily terminate when its corpus has without more been transferred to the beneficiary thereof, *Scott on Trusts, Vol.* 3, § 342, but that the judgment of this Court in Civil Action 715 bars Edward C. Davis, Jr., from relitigating an issue allegedly decided in that case, namely the right of the trustees to terminate the trust created for his benefit. It is argued that the grantor of the trust having failed to foresee the possibility that Edward C. Davis, Jr., by means of invoking discretionary action on the part of the trustees might, prior to his sister's death, bring about the termination of the trust created for his benefit, the Court may not, as in a will case where intestacy is to be avoided

whenever possible, strain to carry out a settlor's apparent or implied intent solely to avoid a resulting trust or the reversion of trust corpus to a grantor's estate. In other words, it is contended that in a case involving the interpretation of the terms of a trust indenture the guiding principle in determining a settlor's intent is not, what did he indend to say, but what did he intend by what he did say? *Chater v. Carter,* 238 *U.S.* 572, 35 *S.Ct.* 859, 59 *L.Ed.* 1462. It is contended that a number of possible contingencies were overlooked by the settlor, the happening of any of which would have resulted in a failure of parts of the trust plan set forth in the indenture of trust, and it is vigorously argued that where a settlor has not effectively provided for the disposal of trust property so as to avoid any possibility of failure of trust or reverter, the Court may not for the purported object of carrying out the settlor's intent provide for the complete disposition of trust property when the settlor has failed to do so himself.

Counsel for Edward C. Davis, Jr., take the basic position that the Edward trust has clearly not been formally terminated to date and that their client accordingly is not estopped to deny the Schneider allegations that termination is an accomplished fact. They point out that there are no official documents of record evidencing termination of such trust, no resignations of the trustees, no formal account filed, and that no independent evidence of such termination has been introduced or even pleaded. It is contended that the spendthrift provisions of the trust preventing assignment of trust assets alone prevented termination of the Edward trust at least until the precise interest of such trust in the corpus of the Sarah trust should be determined, depending on the contingency among others of whether or not the settlor were alive at Sarah's death. It is further argued that the interest of Edward's children in the trust assets required a continuation of the Edward trust at least until Sarah's death, and finally and perhaps most importantly that the Edward trust must necessarily have remained in effect to serve as a conduit through which under certain factual situations the corpus of the Sarah trust might either pass to Edward or be ultimately distributed by the trustees along with the assets of the Edward trust between the settlor's brother and sister or their heirs at law under item eighth of the trust indenture.

 Admittedly, there is no decree terminating the Edward trust (which by its terms is irrevocable), and while the word termination was used by counsel for Edward C. Davis, Jr., in their briefs filed in Civil Action 715, and appeared in the answer filed in that case by the guardian for the minor children of Edward C. Davis, Jr., the opinion filed in that case did not deal with such subject, nor did the final order of October 26, 1956, which merely authorized the trustees in their discretion to "* * * make or withhold payment of the corpus * * *" of the Edward trust notwithstanding the fact that the settlor was then living. Accordingly, the Schneider defendants have no possible grounds for relying on such proceeding as an adjudication of the issue here involved. Furthermore, the receipt and release executed by Edward C. Davis, Jr., did no more than deal with the turning over of the then assets of the Edward trust it being silent as to Edward C. Davis, Jr.'s interest in his sister's trust. Finally, no reference is made to termination in item fifth of the trust indenture, and I am satisfied that inasmuch as there was at the time Civil Action 715 was decided a material purpose in maintaining such trust in being, its termination in such action was properly not decreed, *Scott on Trusts, Vol.* 3, § 342.

I conclude therefore that inasmuch as the Edward trust was, in my opinion, technically in existence at the time of Sarah's death, it having a purpose to serve notwithstanding the draining off of its original assets, as then constituted, as a result of the 1956 proceeding, it may serve as a conduit for the ultimate turning over of the corpus of Sarah's trust to Edward C. Davis, Jr. Compare comment p., p. 166, § 337, *Restatement of the Law; Trusts.*

Having concluded that there was no formal termination of the Edward trust prior to Sarah's death such as to prevent the carrying out of the settlor's intent as to the devolution of trust property along the precise lines spelled out by him in the trust indenture (and it is upon such grounds that I rest my decision), it would, nonetheless, have been at odds with the settlor's intent to declare a resulting trust or to decree that the corpus of the Sarah trust must pass under the settlor's estate in view of his clearly expressed purpose that the corpus of the Sarah trust should be held in further trust for the benefit of her

issue only if her brother, having failed to attain the age of thirty-five, was not living at the time of her death.

The donative scheme found within the four corners of the indenture is clearly weighted in favor of the son. His portion of trust assets was to go to him outright at the age of thirty-five, provided his father were then dead, and might be turned over to him by the trustees in their discretion were his father alive (as transpired) at the time the son became thirty-five. On the other hand the corpus of the Sarah trust was never to be distributed to her outright except to the extent that item third of the indenture authorized the trustees to pay over to Sarah such amounts from principal and net income or both as the trustees in their discretion should deem proper and reasonable for her benefit, nor was the corpus of the Edward trust to be added to that of the Sarah trust unless her brother were to predecease her, not having attained the age of thirty-five and leaving no issue. Finally, as noted earlier, the corpus of the Sarah trust was to be paid over to her children only if she should survive her brother and then not until twenty years after her death.

In short, it would contravene the settlor's intent had I been compelled as a result of the adoption of the technical contentions as to termination advanced by the Schneider interests to declare a resulting trust. However, having determined that the Edward trust was not terminated or extinguished prior to Sarah's death, I need not consider at greater length the parties' contentions concerning the over-all plan of the testator, *duPont v. Equitable Security Trust Co.,* 35 *Del.Ch.* 514, 122 *A.2d* 429. By the same token no consideration has been given to the interrogatories addressed to persons having some knowledge of the background of the settlor's plan.

As to the claim of the Schneider litigants that the trustees should be directed to pay Sarah's debts as of the time of her death I decline to interfere with the decision not to make such payments from the Sarah trust. Item third of the Sarah trust actually provides only for the payment to Sarah of such sums of money as the trustees "* * * in their absolute discretion deem proper and advisable * * *".

Furthermore, such trust, as noted above, contains a spendthrift clause. However, assuming discretionary power in such trustees to pay the creditors of Sarah's estate, I do not believe that such power has been abused, *Scott on Trusts, Vol.* 2, § 187, and compare *Edmonds v. White,* 35 *Del.Ch.* 367, 118 *A.2d* 608. In the light of the terms of the settlor's will directing that provision be made from his estate for the care and support of Sarah as well as the fact that Sarah's own estate is sufficient to pay her debts, I conclude that the trustees have not been guilty of such an abuse of discretion in declining to make such requested payments as to compel this Court to direct otherwise. While only two of the present trustees, namely M. A. Tarumianz and Edward C. Davis, Jr., have permitted such refusal to be made a matter of record, and Davis, Jr., is, to say the least, not unbiased insofar as his sister's interest and those of her child are concerned, an affirmative act of multiple trustees requires unanimity, *Restatement of the Law, Trusts,* § 194. There is nothing of record to evidence that the trustee, M. A. Tarumianz, has declined to act on the administrator's request on any basis other than his own best judgment exercised in the light of the facts before him, nor does Delaware Trust Company seek an order directing that Sarah's debts be paid from her trust. I decline to direct the trustees to take affirmative action which they, in their absolute discretion, have declined to take.

I suggest that the precise form of order to be entered herein insofar as it directs transferal by the trustees of the assets of the Sarah trust be determined after a conference with counsel and such additional briefing and argument as may prove to be necessary.