## Nicholson Trust

384

*J. Leon Rabben,* for exceptants.

*Murray H. Spahr, Jr.,* and *Clark, Spahr, Eichman & Yardley,* contra.

SHOYER, J., December 15, 1961.—The narrow issue in this case is the proper interpretation of the phrase "such similar trusts" contained in a deed of trust given by her grandfather for the benefit of Anna Nicholson Herbert (later Suplee).

On December 31, 1919, by seven separate deeds, William R. Nicholson created a trust for each of his four grandsons and three granddaughters, of whom Anna Suplee was one. In each trust, settlor named his two sons as trustees and the Land Title and Trust Company as succeeding trustee. Each instrument directed that, upon death of the beneficiary without leav-

ing lawful issue, "then In Trust to pay over, assign and transfer the said shares of stock unto the Trustees of *such similar trusts* as I have this day declared for my other *grandchildren* to be held upon the trusts in the several declarations specifically set forth". (Italics supplied.)

The res of each trust was 150 shares of the capital stock of the Land Title and Trust Company, of which settlor was president. Allowing for the difference in the names of the beneficiaries and in the numbers of the various stock certificates, the deeds were identical, except that in the case of the trusts for the settlor's grandsons, the deeds provided that if the "Trustees (in their uncontrolled discretion) at any time after the said . . . [named grandson] shall have attained the age of twenty-five years decide that he possesses sufficient business ability to be entrusted with the care and management thereof they are hereby authorized and empowered to transfer and deliver to him for his own use absolutely all or any part of the said shares of stock so as aforesaid held in trust for him." No such provision for delivery of the corpus to a granddaughter is contained in their three deeds.

The grandsons, in turn, having reached the age of 25, the trustees delivered to each said beneficiary the securities then comprising the corpus of his trust and took from him a written release.

Following the death of the two individual trustees, Anna Suplee died on March 19, 1959, without issue. Six grandchildren survive. One granddaughter, Winifred, is an incompetent, for whose estate William R. Nicholson, 3rd, her brother, has been appointed guardian. On behalf of his ward, he claims that distribution of the Suplee corpus should now be made in two equal shares to his ward and the other granddaughter, their cousin, Ruth. The other grandchildren, includ-

ing Ruth, claim that each surviving grandchild is entitled to a one-sixth share.

Judge Burke, the auditing judge, ruled that settlor's use of the word "grandchildren" in designating the cross-remaindermen embraced *grandsons* as well as *granddaughters*, and that the earlier distribution of the securities to the grandsons did not preclude them from sharing in the present distribution of the Suplee corpus. His awards to the four grandsons were direct, and not to the trustee.

By competent evidence before the learned auditing judge, it was proven that settlor had but seven grandchildren, and on the same day, to wit, December 31, 1919, he created a trust for each grandchild by seven separate written instruments. It is clear that the phrase "such similar trusts" in the instant trust deed embraces each of these seven trusts and no others. The one significant difference in these trust instruments is that the granddaughters were to receive only income from the trusts, whereas the grandsons, within the broad discretion of the trustee, could receive distribution of the principal after they attained 25 years of age, provided the trustee was of the opinion that such grandson "possesses sufficient business ability to be entrusted with the care and management thereof." This court recently held that the provision in a trust instrument permitting the trustee to pay the entire corpus to a male was not sufficient ground to differentiate the son's trust from a provision that females should receive only income for life: Henderson Estate, 23 D. & C. 2d 719.

In so holding, we relied on Webb's Estate, 62 Pa. Superior Ct. 547, where testator had directed his executors to divide his residuary estate into five equal parts, to hold the same in trust, paying the net income from four parts to his four daughters but giving one-fifth absolutely to Hiram, his only son. The court there

held that the trustee of the estate of Hiram, who was then deceased, was entitled to share equally with his three sisters in the remainder share of the one sister who had died without issue. The doctrine of equality among heirs rendered the "conclusion irresistible" that testator intended Hiram to so share, regardless of the fact that he had previously received his one-fifth part outright.

Exceptant strongly argued to the auditing judge and before the court en banc that this case involves termination of trusts, and because the corpus of each of the trusts for the grandsons had been distributed by the trustees in the uncontrolled exercise of their discretion, these trusts were terminated, and the grandsons, therefore, forfeited any rights in the instant trust. This case in no sense involves termination of trusts. Reliance is placed by exceptant on Restatement of Trusts 2d, Termination and Modification, §342, which reads as follows:

"If there is a sole beneficiary who is not under an incapacity and the trustee transfers the trust property to him . . ., the trust terminates although the purposes of the trust have not been fully accomplished."

Application of this rule of law requires interpretation of the phrase "trust property." By "trust property" is meant the interests which are held in trust: Ibid. §2, comment c, which would include the cross-remainder interests held by the trustees of each "similar trust."

It is clear that these remainder interests were never transferred to the grandsons, for, when the various securities were delivered to them, there was no formal written assignment of *all the assets* in their respective trusts, but merely a physical delivery of the bonds and an assignment endorsed on back of the certificates where necessary. A written list itemizing the securities was prepared and signed by each grandson, re-

leasing the trustees and requesting their discharge. There was never any formal accounting in a court of record, nor were the trustees ever formally discharged. In Delaware Trust Co. v. Davis, 163 A. 2d 588, the Delaware Court of Chancery was faced with an analogous situation and held that the trust continued as a "conduit" for the remainder interest.

Counsel for Winifred's guardian misapprehends the true import of section 342 of the Restatement. Not only is there lacking from the present situation any conveyance by the trustees of the remainder interests, but the reasons which support the statement of principle in §342 are here completely absent. As pointed out by Professor Scott in his authoritative treatise on Trusts 2d, vol. III 2509-10, following his discussion of the cases which support the Restatement's above-quoted rule: "All of these cases rest upon the principle that a beneficiary of a trust cannot hold the trustee liable for an act or omission of the trustee as a breach of trust if the beneficiary consented to it." Here, of course, there is no allegation of any misconduct on the part of the trustees.

At very least these were open-end trusts, obligating the trustees, who were identical in each instrument, to receive remainder assets from the other trusts. The distribution by the trustee of all the physical assets in its possession at a given instant could not possibly forfeit the rights of the trust beneficiaries to receive additional assets from the other trust deeds.

If additional support for our views were needed, we could find it in the principle that the law leans toward equality among heirs: Ziegler Estate, 356 Pa. 93; Henderson Estate, supra, 721, 724, 727. And a construction which causes an heir to be disinherited or which works an invidious distinction between the heirs is to be avoided if possible: 6 Hunter O. C. Commonplace Book 2d, Wills, 257; Hirsh's Trust Estate, 334

Pa. 172, 179; Doyle v. McKean, 132 Pa. Superior Ct. 285. " 'There is a presumption that the [settlor] intended equality of distribution among his beneficiaries' ": Hirsh's Trust Estate, supra, 179; Kenworthy's Estate, 269 Pa. 315, 319.

By writing filed since the argument before the court en banc, the succeeding trustee has advised us that in the event the court awards the shares of the grandsons in trust, the trustee would, in the exercise of its discretion, deliver the same immediately to the respective beneficiaries. Such distribution would be in accord with settlor's intention. Hence, there is no occasion for disturbing the awards made directly to the grandsons by the learned auditing judge.

For the above reasons, the exceptions are dismissed and the adjudication is confirmed absolutely.