Loretto Lohman **ROBERTS**, Appellant,

v.

Franklin H. **ROBERTS**, Appellee.

No. 16645.

United States Court of Appeals Ninth Circuit.

Feb. 8, 1961.

H. Cleveland Hall, John C. Hall, Great Falls, Mont., for appellant.

J. J. Wuerthner, John P. Wuerthner, Great Falls, Mont., for appellee.

Before STEPHENS, POPE and MERRILL, Circuit Judges.

POPE, Circuit Judge.

On November 7, 1945, George W. Roberts, a resident of Montana, purchased 375.094 shares of Investors Stock Fund, Inc., a Nevada corporation, licensed to do business and sell its securities in Montana. These shares were evidenced by certificate No. 1738 dated November 13, 1945. The certificate recited that George W. Roberts, as trustee for Franklin H. Roberts, was the owner of the shares mentioned in the certificate.

At the time of his purchase of the stock, George W. Roberts executed under the heading of "Declaration of Trust—Revocable", an instrument reciting that he had directed that this certificate be issued in his name as trustee for Franklin H. Roberts as beneficiary, and declaring and setting forth the terms and conditions upon which he should hold said stock in trust and any additional stock resulting from any reinvestment of cash dividends upon the original shares.

Among the stated terms were that during his lifetime all cash dividends on the stock were to be paid to George W. Roberts individually for his own account, and that all additional stock purchased under an authorized reinvestment of cash dividends should be made a part of and subject to the trust. It recited that upon the settlor's death the title to the stock and the right to any subsequent payments or distributions should be vested absolutely in the beneficiary. During his lifetime the settlor reserved the right as trustee to vote, sell, redeem, or otherwise deal in or with the stock; upon any sale or redemption of stock the trust should terminate as to the stock sold or redeemed, and George W. Roberts should be entitled to obtain the proceeds of the sale or redemption. He reserved the right at any time to change the beneficiary or revoke the trust; and upon revocation or termination of the trust, the stock and all rights thereunder should belong to and be exercised by George in his individual capacity.

Franklin H. Roberts, the named beneficiary, was a brother of George W. Roberts. George died testate on November 9, 1954 and his will was admitted to probate. The inventory of the estate listed these shares among other assets of the estate by describing them as "Issued to George W. Roberts as Trustee for Franklin H. Roberts" and they were appraised by the appraisers for the estate as of the value of $7974.50. Thereafter, and following the petition for distribution of the estate, the district court of Blaine County, Montana, in which the probate proceedings were had, issued and filed on May 8, 1956, a decree of distribution under which there was ordered and decreed to be distributed to Loretto Lohman Roberts, as the widow and sole heir of George W. Roberts, deceased, other described property, and also the "375.094 shares of Investors Stock Fund, Inc., evidenced by certificate No. 1738 dated November 13, 1945". Although George W. Roberts left a will, the widow, appellant here, had renounced the provisions of the will.

On July 13, 1956, Franklin H. Roberts filed in the same court in the matter of the estate of George W. Roberts, deceased, a motion to set aside the decree of distribution. The court, after hearing, denied the motion.

Prior to the filing of the petition for distribution and the other proceedings which followed it, it had come to the attention of Investors Stock Fund, Inc., that both Loretto Lohman Roberts, as executrix and heir of the estate of George W. Roberts, and Franklin H. Roberts were claiming the certificate and the stock. Accordingly, it initiated the action below by filing a complaint in interpleader against Franklin H. Roberts, Loretto Lohman Roberts, and Oswald M. Johnson, executrix and executor of the estate of George W. Roberts, and Loretto Lohman Roberts as widow and sole heir at law of George W. Roberts. This resulted in an interlocutory decree entered May 9, 1956, whereby the plaintiff cor-

poration was released and discharged from all claim or liability to the defendants except for the reissuance of the stock to whomsoever should be found in the action to be the owner thereof, and defendants were required to interplead and settle their claims, demands and matters in controversy; Loretto to file her answer within 30 days and Franklin to file his responsive pleading 30 days thereafter. Johnson, the co-executor filed a disclaimer of interest; Loretto Lohman Roberts filed a complaint in interpleader directed against Franklin H. Roberts. Franklin H. Roberts answered and following the reply of Loretto Lohman Roberts and the filing of a supplemental complaint on her part, which was answered, the cause was submitted to the court below upon motions for summary judgment made on behalf of each party. Both motions were based upon the admissions made in the several pleadings, the answers to requests for admissions and the stipulations set forth in a pretrial order.

The trial court filed its order and opinion (179 F.Supp. 185) directing that the motion for summary judgment of Loretto Lohman Roberts be denied and sustaining the motion for summary judgment on behalf of Franklin H. Roberts. Judgment was entered accordingly, holding that the declaration of trust created a valid inter-vivos trust under which Franklin H. Roberts became the owner of the stock mentioned at the death of George W. Roberts and directing the plaintiff in interpleader, Loretto Lohman Roberts, to surrender the stock certificate to Franklin H. Roberts.

Upon this appeal two principal questions are presented which are stated in the trial court's opinion, as follows: "First, is the decree of distribution entered by the probate court in the estate of George W. Roberts, deceased, conclusive as to the ownership of said certificate of stock, and Second, did the 'Declaration of Trust—Revocable,' executed by George W. Roberts at the time he purchased the stock, create a valid inter vivos trust, or is the same void as an attempted testamentary disposition of the stock certifi-

cate, it being conceded that the declaration of trust was not executed in conformity with the Montana statutes on wills?"

In answering the first of these questions in the negative the district court quoted from In re Dolenty's Estate, 53 Mont. 33, 161 P. 524, at page 529, as follows: "A district court sitting in probate has only the special and limited powers conferred by statute, and has no power to hear and determine any matters other than those which come within the purview of the statute or which are implied as necessary to a complete exercise of those expressly conferred. (Citing cases.) Among the powers conferred by the part of the Codes relating to probate proceedings * * * we do not find any provision authorizing the court, in connection with the settlement of estates, to determine questions of title between the estate and persons claiming adversely to it. These questions must be determined in proper proceedings instituted for that purpose (Citing cases)."

The court also quoted from In re Day's Estate, 119 Mont. 547, 177 P.2d 862, 865, as follows: "It is also well settled in this state that a district court sitting in probate cannot try questions of title or ownership of property alleged to belong to an estate." In support of the rules there stated the court cited the following: In re Tuohy's Estate, 33 Mont. 230, 83 P. 486; In re Jennings' Estate, 74 Mont. 449, 241 P. 648; In re Davis' Estate, 27 Mont. 490, 71 P. 757; In re Vincent's Estate, 133 Mont. 424, 324 P.2d 403.

This limitation on the authority and jurisdiction of a Montana district court sitting in probate which found its most recent expression in In re Vincent's Estate, supra, and which has always been a recognized rule in Montana, follows similar decisions in California where the state constitutional provisions and probate statutes are substantially the same as those in Montana. This was noted in another fairly recent case in Montana, Hustad v. Reed, 133 Mont. 211, 321 P.2d 1083, 1092, where the court quoted with approval from a number of California de-

cisions which hold that a probate court has no authority to determine rights between distributees and other persons not claiming in their capacities as heirs, devisees or legatees in a case such as this one.

This court has had occasion heretofore to note the same rule with respect to probate proceedings in Montana. Thus in Barker v. Edwards, 9 Cir., 259 F. 484, 486, this court, speaking of probate proceedings in Montana, said: " * * * the court had no power to adjudicate and finally determine questions of title between the estate and third persons, as that could only be done by action in which the parties could have a trial in the ordinary way."

This court again made the same statement with respect to the power of a Montana district court sitting in probate in the case of Maury v. Jones, 9 Cir., 25 F.2d 412, 415. See also reference to California probate proceedings in Tooley v. Commissioner, 9 Cir., 121 F.2d 350, 357.

Despite this long list of decisions, the appellant argues that the state court in this case did in fact undertake to determine title of the stock certificate here involved to belong to the appellant, and did determine its own jurisdiction to do so, and that since no appeal was taken from the orders of the probate court, those orders are now final and res judicata both as to ownership of the shares and as to the court's own jurisdiction to make such an order.

We think that the trial court was correct in holding that none of the orders of the probate court operated as a determination or adjudication of any of the issues between appellant and appellee with respect to the ownership or rights to the stock here in question, or as to the jurisdiction of the probate court.

■ Primarily there is nothing to show that the probate court purported to adjudicate any of these questions. In the words of the trial court, "all that the probate court, by the decree of distribution, did was to say in effect: 'whatever title passed to Loretto Lohman Roberts

in this stock by virtue of George W. Roberts' death is confirmed in her. * * ' " It is hardly to be expected that the Montana district court, sitting in probate, did not know the limitations of its own authority in the issuance of a decree of distribution. Certainly its decree did not contain any express statement that by this decree the court was adjudicating Loretto Lohman Roberts to be the owner of this property against the claims of all persons whomsoever or against any claim of Franklin H. Roberts.

Appellant seems to think that when the probate court denied Franklin H. Roberts' motion to vacate the decree of distribution, it then adjudged both that this decree of distribution was an adjudication of title against him, and that the probate court had power and jurisdiction to make such an adjudication.

The order denying the motion to vacate contains no language to indicate that such was its import. The denial is as consistent with very different views which the court may have had when the order was made. It may have been the view of the court, (a very proper view), that vacating the decree of distribution was unnecessary for the protection of the rights of Franklin H. Roberts for that court well knew, we must assume, that the decree of distribution was no adjudication as between the estate's ownership and that of Franklin H. Roberts and hence the motion may have been denied as merely unnecessary and serving no useful purpose.

The court may also have properly denied it for the reason that Franklin H. Roberts was not a proper party in such a proceeding. Perhaps more likely the denial was motivated by the court's view, a correct one, that the probate court did not have jurisdiction to adjudicate any rights between Loretto and Franklin.

It is provided in the Revised Codes of Montana, 1947, § 93–1001–23, as follows: "What deemed adjudged in a judgment. That only is deemed to have been adjudged in a former judgment which appears upon its face to have been so adjudged, or which was actually and neces-

sarily included therein or necessary thereto." In Hustad v. Reed, supra, the Montana court, construing that statute said [133 Mont. 211, 321 P.2d 1091]:

"[A] judgment or final order in an action or proceeding is not evidence, conclusive or otherwise, of matters that were not involved in the proceeding and not determined." The effect of a decree of distribution in probate in Montana, is stated in Revised Codes of Montana of 1947, § 91–3902, as follows: "Order of distribution, contents and finality of. In the order, the court or judge must name the persons and the proportions or parts to which each shall be entitled, and such persons may demand, sue for, and recover their respective shares from the executor or administrator, or any person having the same in possession. Such order is conclusive as to the rights of heirs, legatees, or devisees, subject only to be reversed, set aside, or modified on appeal." This provision was adopted from a substantially similar provision in California, now California Probate Code § 1021. In holding that a decree of distribution is not res judicata of the interest of a party claiming as a stranger to the estate, it was stated in Shelton v. Vance, 106 Cal. App.2d 194, 234 P.2d 1012, 1014, as follows: "While a decree of distribution is conclusive as to the rights of heirs, legatees, or devisees, insofar as they claim in such capacities, it does not determine that the deceased had any title to property distributed; nor does it bind third persons who claim an interest adverse to that of the intestate or testator. It merely determines the succession or testamentary disposition of such title as the decedent may have had." See in accord Chever v. Ching Hong Poy, 82 Cal. 68, 22 P. 1081, cited in Hustad v. Reed, supra.

The argument which appellant has made with respect to the orders of the probate court being res judicata and not subject to collateral attack is wholly without point here. The probate court did not purport to adjudicate either the title to the property here involved or its own jurisdiction to make such an adjudication.[1] The decision of the court below is not a collateral or any other attack upon the orders of the probate court. The district court accepted those orders for exactly what they purported to be; and there is no justification whatever in this regard for assuming that the probate court undertook to do anything other than operate within its standard and appropriate field of jurisdiction.

This brings us to the second question which this case presents, namely, whether the "Declaration of Trust—Revocable" which George W. Roberts executed at the time he purchased the stock created a valid inter-vivos trust. The appellant argues that it did not; that in substance it was no more than an attempt to dispose of property after the death of George W. Roberts over which he retained control during his lifetime, and since it was not executed in conformity

---

1. Since the probate court did not in fact adjudicate any title, it cannot be said to have impliedly found that it had jurisdiction to do so. When a court of general jurisdiction actually decides a question it may under some circumstances be said to decide, impliedly, that it has jurisdiction to make that decision. When such a decision as to jurisdiction is based upon facts which may be called "quasi jurisdictional", Noble v. Union River Logging Railroad, 147 U.S. 165, 173, 13 S. Ct. 271, 37 L.Ed. 123, and those facts are found on a "contested issue", and "where adversary parties appear", Stoll v. Gottlieb, 305 U.S. 165, 171–172, 59 S. Ct. 134, 137, 83 L.Ed. 104, it may not be subject to collateral attack. Cf. Bald-

win v. Iowa State Traveling Men's Ass'n, 283 U.S. 522, 525–526, 51 S.Ct. 517, 75 L.Ed. 1244, and Yanow v. Weyerhaeuser Steamship Co., 9 Cir., 274 F. 2d 274, 277. But that situation could never arise here, even if the probate court had purported to decide title and to hold it had jurisdiction to do so. "A court does not have the power, by judicial fiat, to extend its jurisdiction over matters beyond the scope of the authority granted to it by its creators." Stoll v. Gottlieb, supra. An effort of a probate court to make such decisions would be as completely void as an attempt to probate and distribute the estate of a living person. Noble v. Union River Logging Railroad, supra.

with the statute of wills, it is null and void and of no force and effect.

The trial court dealt fully with this question and concluded that the instrument referred to created a valid intervivos trust so that upon the death of George W. Roberts the stock became the absolute property of Franklin H. Roberts. The able discussion of this subject by the trial judge is set forth in the district court's opinion, Investors Stock Fund, Inc. v. Roberts, 179 F.Supp. 185, 191 to 195. There is appended to the opinion at page 198 a copy of the trust instrument.

In brief, the court concluded that under the law of Montana, the rule as to such a trust instrument was as stated in § 57 of the Restatement of the Law of Trusts, Second, which states: "Disposition Inter Vivos Where Settlor Reserves Power to Revoke, Modify or Control—Where an interest in the trust property is created in a beneficiary other than the settlor, the disposition is not testamentary and in-valid for failure to comply with the re-quirements of the Statute of Wills merely because the settlor reserves a beneficial life interest or because he reserves in ad-dition a power to revoke the trust in whole or in part, and a power to modify the trust, and a power to control the trustee as to the administration of the trust." [2]

So far as the power of revocation is concerned, the trial court quoted with emphasis section 86–602 of the Revised Codes of Montana, 1947, which expressly recognizes the propriety of inserting such power of revocation in a valid trust.[3] The court also noted that in the cases of Farkas v. Williams, 5 Ill.2d 417, 125 N.E. 2d 600, and Ridge v. Bright, 244 N.C. 345, 93 S.E.2d 607, declarations of trust identical with the one involved here were held to be valid. What the trial court had to say respecting the validity of the trust instrument meets with our entire approval.

The judgment is affirmed.

2. The trial judge cites in his opinion the first edition of the Restatement. The second edition of the Restatement reinforces the trial court's opinion even more strongly than did the first. While there have been divisions of opinion upon this question, (compare 1 Bogert Trusts and Trustees, §§ 103, 104, especially pp. 486–491, with Scott on Trusts, Second Edition, 1956, § 57 to 57.2 and 57.6), the more recent decisions show an increasing support for the trial court's conclusions as to the law here applicable. Comment "h" to § 57 of Restatement Second, supra, is as follows: "h. Declaration of trust. The rule stated in this Section is applicable not only where the owner of property transfers it to another as trustee, but also where he declares himself trustee of the property. The disposition is not testamentary and invalid for failure to comply with the requirements of the Statute of Wills merely because the settlor-trustee reserves a beneficial life interest and power to revoke and modify the trust. The fact that as trustee he controls the administration of the trust does not invalidate it."

3. "A trust cannot be revoked by the trustor after its acceptance, actual or presumed, by the trustee and beneficiaries, except by the consent of all the beneficiaries, unless the declaration of trust reserves a power of revocation to the trustor, and in that case the power must be strictly pursued."