Richard E. NICKSON and the Slick Corporation, a Delaware corporation, Plaintiffs,

v.

FILTROL CORPORATION, a Delaware corporation, Myron A. Bantrell, Ralph M. Haney, Leon A. Kahn, Harold W. Sanders and O. Milton Stout, Defendants.

Court of Chancery of Delaware, New Castle.

Jan. 27, 1970.

Henry M. Canby, Charles F. Richards, Jr., and Richard F. Balotti, of Richards, Layton & Finger, Wilmington, for plaintiffs.

Richard L. Sutton and Paul P. Welsh, of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendant, Filtrol Corp.

E. D. Griffenberg, Jr., of Potter, Anderson & Corroon, Wilmington, for defendant, Myron A. Bantrell and other individual defendants.

DUFFY, Chancellor:

This is a derivative action brought for the benefit of Filtrol Corporation, a Delaware corporation (Filtrol). Plaintiffs are Richard E. Nickson, a record holder of 100 shares of Filtrol stock, and The Slick Corporation, a Delaware corporation (Slick), which holds something over 1,320,000 shares, or more than 50% of those outstanding. The individual defendants are the directors and officers of Filtrol: Myron A. Bantrell, Ralph M. Haney, Leon A. Kahn, Harold W. Sanders and O. Milton Stout (defendants).

The complaint alleges that Bantrell has selected and designated the other directors and has dominated and controlled both the Board and the business of the corporation. The stated grievance is that Bantrell caused Filtrol to buy certain bonds from a securities dealer who had bought the bonds for the same price on the same day from Bantrell. It is alleged that the price Bantrell received and the price Filtrol paid were far in excess of the true value of the bonds. There also are allegations to the effect that defendants have caused Filtrol to retain the bonds so purchased even though their value has continuously depreciated, and have deceived stockholders by stating in filings with the Securities and Exchange Commission and the New York Stock Exchange and in annual corporate reports that the value of the bonds purchased equalled the price paid for them by Filtrol. Fraud and breaches of fiduciary duty are thus charged to all defendants.

I

I first consider Filtrol's motion to dismiss the complaint as to Slick on the ground that it was not a stockholder at the time of the transaction about which complaint is made.[1]

Slick became a Filtrol stockholder on December 24, 1968. It alleges that sale of bonds by Bantrell to Taylor & Company, the Los Angeles security dealer, and the latter's sale to Filtrol took place on October 10, 1966; these are the transfers said to be for values "far in excess of the true value of the bonds at the time the respective transfers were made."

Since the alleged sale through Taylor & Company was made some two years before Slick acquired stock, it would seem, prima facie, that the statute bars complaint by Slick. But it seeks to avoid that result by arguing that the complaint alleges not one but three separate and independent wrongs: purchase of the bonds, retention while their value steadily decreased, and fraudulent misrepresentation of their true value in various public documents.

I regard Newkirk v. W. J. Rainey, Inc., 31 Del.Ch. 433, 76 A.2d 121 (1950), as definitive of both the meaning and purpose of our "transaction" requirement. There the Court said:

"I must determine what are the 'transactions' and whether they were continuing when plaintiffs acquired their stock. Of course, in one sense every wrongful transaction constitutes a continuing wrong to the corporation until remedied. But if the rule embodied in Sec. 51A [§ 327] is to be meaningful, then clearly 'continuing wrong' cannot be construed in such a sense because it would substantially defeat the statutory policy embodied in Sec. 51A. That policy is the pre-

vention of the evil of purchasing stock in order to maintain a derivative action designed to attack a transaction which occurred prior to the purchase of the stock. See Rosenthal v. Burry Biscuit Corp., 30 Del.Ch. 299, 60 A.2d 106.

"Although a conspiracy culminating in the 1948 merger is alleged, the fact is that plaintiffs complain of and seek relief with respect to three specific transactions. They involve three stock purchases in the years 1944 and 1945. Those purchases in my opinion are the transactions in the sense in which the term 'transaction' is employed in Sec. 51A. I say this because they are the wrongful acts which plaintiffs want remedied and which are susceptible of being remedied in a legal tribunal. The allegation of a conspiracy cannot obscure the hard fact that the stock purchases are the wrongs which plaintiffs want rectified. Once it is decided, and I so decide, that the stock purchases are the 'transactions' of which plaintiffs complain, it almost necessarily follows under the undisputed facts that such transactions were consummated prior to the date plaintiffs acquired their stock."

And so here. The wrong which Slick wants remedied and which is capable of being remedied in a judicial tribunal is the purchase of the bonds from Bantrell at prices substantially more than their value. That is the grievance to which the complaint is directed and that is what can be legally remedied.

The allegations of retention and concealment cannot obscure the fact that Slick is complaining about a fraudulent purchase made before it owned Filtrol stock. Continuing to hold bonds which have depreciated does not, in this case, state an independent transaction to be remedied without

"In any derivative suit instituted by a stockholder of a corporation, it shall be averred in the complaint that the plaintiff was a stockholder of the corporation at the time of the transaction of which he complains or that his stock thereafter devolved upon him by operation of law."

reference to any overpayment by Filtrol. I say this because all the complaint says about retention is that the bonds were held and went down in value; and a fair reading of the allegations makes clear that Slick is not attacking a mere holding of bonds without reference to their acquisition. The latter is what the complaint is all about. And the allegations of concealment are all likewise related to "true value" vis-a-vis the amounts originally paid by Filtrol. In short, both such allegations are of consequences or results flowing from the alleged acquisition of the Bantrell bonds, and are not independent transactions within the meaning of § 327.

Accordingly, Filtrol's motion to dismiss the complaint as to Slick will be granted. Compare Levien v. Sinclair Oil Corporation, Del.Ch., 261 A.2d 911 (1969) and Elster v. American Airlines, 34 Del.Ch., 94, 100 A.2d 219 (1953).

## II

I turn now to the motion of Bantrell to quash as to him an order of sequestration on the grounds of insufficiency of process and lack of jurisdiction over his person and property.

Under an alias order dated August 6, 1969, 126,000 shares of Filtrol stock standing in the name of L. A. Church & Co. were seized on the premise that Bantrell has an interest in them. Bantrell appeared only to move to quash and in support thereof filed an affidavit stating that the shares seized are held in a valid inter-vivos trust. A "declaration of trust" attached to his affidavit states in part as follows:

"Whereas, I, MYRON A. BANTRELL, a single man, of the City of Los Angeles, County of Los Angeles, State of California, and the owner of certain shares of * * * capital stock and certain bonds * * * held in safekeeping by the Bank of America, Note Department, 660 South Spring Street, Los Angeles, California.

"I do hereby acknowledge and declare that I hold said securities and all right, title and interest in same in trust for the use and benefit of the persons and the institution designated below.

"Upon my death, unless the beneficiaries shall predecease me, my Successor Trustee is hereby directed to sell forthwith enough of the aforesaid securities or to use the income therefrom and to distribute the cash proceeds as follows: [omitted from the copy filed]

"I reserve unto myself the power and right to collect dividends, interest or other income from the trust property and pay the same to myself as an individual.

"I reserve unto myself the power and right at any time during my lifetime to amend or revoke in whole or in part the Trust hereby created without the necessity of obtaining the consent of any beneficiary and without giving notice to any beneficiary."

The declaration, dated October 16, 1968, includes appointment of a successor trustee and is signed "Myron A. Bantrell"; it is not witnessed.

Beneficiaries were not identified in the affidavit because for personal reasons, Bantrell says, he does not wish to identify them; he stated affirmatively, however, that they do not include himself, his estate, his creditors or estate creditors, and, with minor exceptions, the assets are to be used to establish post-doctoral fellowships. Bantrell later moved for permission to file under seal a copy of the complete document, with inspection and disclosure limited to counsel for plaintiffs. Plaintiffs oppose that motion.

In his affidavit, which is not contested, Bantrell states that the Filtrol shares registered in the name of L. A. Church & Co. are held pursuant to his declaration of trust. The question thus raised by the motion to quash is whether he has an interest in the shares, which were seized as "his

property," within the meaning of the Delaware sequestration statute.

Bantrell argues that the trust is a valid inter-vivos declaration in which persons other than he have substantial beneficial interests. He says that he does not have legal title to the shares nor a beneficial interest in them, because they belong to the trust and its assets cannot be seized to compel appearance of an income beneficiary.

■ Counsel agree that California law is applicable in determining the nature and extent of Bantrell's interest in the trust and its assets. Cheff v. Athlone Industries, Inc., Del.Sup., 233 A.2d 170 (1967). Once that interest is determined Delaware law controls the question of whether it ·may be sequestered under our statute.[2]

Plaintiffs argue from two premises: first, they say that the declaration was ineffective to create a valid trust and, second, if it was effective, Bantrell retained a beneficial interest in the Filtrol shares which was sequestered by the order entered under § 366.

■ Preliminarily, I observe that it is settled law that the settlor of a trust may be its trustee, Restatement, Second, Trusts § 100, 54 Am.Jur., Trusts § 116, and a reservation of power to revoke or modify its terms does not destroy an otherwise valid trust. Restatement, supra § 37. Plaintiff has not made any attempt to show that California does not accept and apply these general principles.

### A.

■ Turning now to the question of invalidity, plaintiffs first say that the trust imposes no duty on the trustee and hence it is a void, passive trust. A passive trust is one in which the trustee does not have responsibilities or discretionary duties to perform, In re Shaw's Estate, 198 Cal. 352, 246 P. 48 (1926), and an equity court may terminate such a trust before it ends by its terms. Moxley v. Title Ins. & Trust Co., 27 Cal.2d 457, 165 P.2d 15, 163 A.L.R. 838 (1946); Ball v. Mann, 88 Cal.App.2d 695, 199 P.2d 706 (1948). Compare Houston v. Houston, 20 Del.Ch. 1, 175 A. 51 (1922); 2 Bogert, Trusts and Trustees (2 ed.), § 206.

■ Plaintiffs say that as to the life interest there are no fiduciary duties imposed and therefore the equitable interest should be deemed "executed" and Bantrell vested with legal title to that interest. But this argument as to partial passivity is based upon the Statute of Uses (I Scott on Trusts (3 ed.), § 69.2 and the Restatement, supra, § 69) which is limited to a freehold interest in land and does not apply to personal property. Restatement, supra, § 70. Assuming, however, that an equity court has power by whatever name or label to effect "execution" in part, the terms of the trust are now pertinent.

■ Admittedly, the language used by Bantrell is less than clear; he said:

"I reserve unto myself the power and right to collect dividends, interest or other income from the trust property and pay the same to myself as an individual."

---

2. 10 Del.C. § 366(a) provides in part:
    "If it appears in any complaint filed in the Court of Chancery that * * * one or more of the defendants is a non-resident of the State of Delaware, the Court may make an order directing such non-resident defendant * * * to appear by a day certain to be designated. Such order shall be served on such non-resident defendant * * * by mail * * *, and shall be published in such manner as the Court directs, not less than once a week for three consecutive weeks. The Court may compel the appearance of the defendant by the seizure of all or any part of his property, which property may be sold under the order of the Court to pay the demand of the plaintiff, if the defendant does not appear, or otherwise defaults."

Does that mean he reserved a right to receive the dividends on the stocks, that is, that he did not put that right into the trust? Or does it mean that he reserved the right to receive dividends as part of income from the trust? It seems to me that the latter is what is both stated and intended. Reservation was made of the right to collect "dividends, interest" and these are used synonymously with the phrase "other income"—and all of this is to be received "from the trust property", with payment to Bantrell himself as an individual. I read this to be a clumsy but effective equivalent to "collect income from the trust property and pay the same to myself". Plaintiffs have not cited a California case which would reasonably require a different construction.

It follows that as to the life interest the trustee has the duty to collect income from corpus and to pay it to the life beneficiary (Bantrell himself). And the trustee must comply with all duties applicable to a trustee under the California Civil Code. Cf. Dessar v. Bank of America National Trust & Savings Ass'n., 353 F.2d 468 (9 Cir. 1965). In short, the trustee has duties which make the trust active, Bogert, supra, § 207, and it is therefore not passive in whole or in part.

As their second ground for invalidity plaintiffs say that the trust is an attempted testamentary disposition of property which fails to comply with the California Wills Act. Bantrell tacitly concedes that the Act requires two attesting witnesses, Cal. Probate Code, § 50, and his declaration has none.

█ It has long been California law that a trust is not invalid because the settlor retained a life interest in the corpus, coupled with a power of revocation. Nichols v. Emery, 109 Cal. 323, 41 P. 1089 (1895). The thrust of plaintiffs' argument against application of *Nichols* is that there, and in cases which follow it, a "separate" or "independent" trustee was involved. Bantrell, of course, argues that fact makes

no difference. The parties focus on this issue in terms of whether California has adopted the rule in the latest edition of the Restatement, supra, which states, at § 57:

"Where an interest in the trust property is created in a beneficiary other than the settlor, the disposition is not testamentary and invalid for failure to comply with the requirements of the Statute of Wills merely because the settlor reserves a beneficial life interest or because he reserves in addition a power to revoke the trust in whole or in part, and a power to modify the trust, and a power to control the trustee as to the administration of the trust."

And, in particular, Comment h., which reads in part:

"*h. Declaration of trust.* The rule stated in this Section is applicable not only where the owner of property transfers it to another as trustee, but also where he declares himself trustee of the property. The disposition is not testamentary and invalid for failure to comply with the requirements of the Statute of Wills merely because the settlor-trustee reserves a beneficial life interest and power to revoke and modify the trust. The fact that as trustee he controls the administration of the trust does not invalidate it."

While the California courts have not considered this specific question, nothing has been called to my attention which indicates that they would carve out an exception when applying § 57 to a declaration of trust. As I have already observed, under settled general law the creator of a trust may be its trustee and there is no reason to think that California is currently abandoning that rule which was applied in Noble v. Learned, 153 Cal. 245, 94 P. 1047 (1908). And the case discussion of new § 57 certainly shows that California approves the rule. See, for example, Monell v. College of Physicians and Surgeons, 198 Cal.App.

2d 38, 17 Cal.Rptr. 744 (1962) [3] and Smith v. The James Irvine Foundation, 277 F. Supp. 774 (1967, C.D.Cal.). *Monell* applied agency law to its facts which involved an alleged oral trust of a bank account in the hands of an attorney, cf. In re Anderson's Estate, 236 Cal.App.2d 214, 45 Cal.Rptr. 852 (1965), a situation entirely different from that presented here.

■ Bantrell's declaration is not invalid for failure to comply with the California Wills Act.

## B.

■ Plaintiffs contend that Bantrell has interests in the Filtrol stock which have been sequestered and this issue has been briefed, but I am not satisfied that the record and the briefing are sufficient to permit the Court to make a meaningful ruling. I emphasize that the Court is not concerned with reaching Bantrell's interest in the trust *qua* trust. Under general law the interest of a debtor in a trust estate created by him for his own benefit may be reached by a creditor's bill, 21 Am.Jur.2d, Creditors Bills § 46, so to the extent that sequestration is analogous to a creditor's bill such an interest may be reached. But plaintiffs have not contended that Bantrell's interest in the *trust* has a situs in Delaware. On the contrary, they argue that there is no trust (in law, at least), or that Bantrell has an interest in the Filtrol stock which is not in the trust, and so on.

■ Plaintiffs say that Bantrell has a resulting trust in all or a part of the stock which is the subject of the declaration, and this calls into scrutiny the dispositive provisions of the instrument, all of which have not been available to plaintiffs. These are relevant on the question of whether surplus stock and cash are held on a resulting trust for Bantrell. To get at this, it seems to me appropriate to grant his motion for a protective order, and I will do so. Accordingly, Bantrell must file with an affidavit the original or a duplicate original of his declaration of trust dated October 16, 1968, which will be sealed by the Court and made available only to Delaware counsel for plaintiffs, who will be prohibited from disclosing the contents to anyone, including their clients. After examination counsel may move for leave to make disclosure of the complete declaration to others, including plaintiffs.

I defer a ruling on this phase of the case until production is made and counsel have been heard.

3. The reference in the opinion to the earlier version of § 57 is for "historical" purposes only.