Maurice **WESTERFELD** et al., Petitioners,

v.

Arthur L. **HUCKABY**, Respondent.

No. B–2528.

Supreme Court of Texas.

Dec. 8, 1971.

Rehearing Denied Jan. 13, 1972.

---

7. Prosser, Nuisance Without Fault, 20 Tex.Law Rev. 399 at 418 (1942).

Sam Sterrett, Jr. and Eugene Chambers, Robert L. Smith, Houston, for petitioners.

J. Edwin Smith, Houston, for respondent.

POPE, Justice.

Maurice Westerfeld, Temporary Administrator of the Estate of Virginia B. Miller, instituted suit against Arthur L. Huckaby to recover title and possession of two lots located in Houston, Texas, and for judgment declaring of no force and effect two trust instruments and two quitclaim deeds executed by Virginia B. Miller. In a trial before the court, judgment was rendered in favor of defendant Huckaby and the court of civil appeals affirmed. 462 S.W.2d 324. We affirm the judgments of the courts below.

On November 7, 1966, Virginia B. Miller executed two declarations of trust, each describing a separate lot in Houston. Virginia B. Miller also executed and recorded two separate quitclaim deeds by which she quitclaimed to herself as trustee and to her successor trustee the same lots covered by the declarations of trust. The settlor died on February 24, 1968. One of the declarations of trust, and one of the deeds, omitting the settlor's signature and acknowledgment, will be set forth in full. The others are substantially the same.

*The Declaration of Trust:*

WHEREAS, I, Virginia B. Miller of the City of Houston, County of Harris, State of Texas am the owner of certain real property located at 1203 and 1209 Matthews, also, 1220 Andrews Streets in the said City of Houston, State of Texas which property is described more fully in the Deed conveying it from Frankie Watkins to Virginia B. Miller, as "that certain piece or parcel of land with buildings thereon standing, located in said Houston, being

Lot no. four (4), in Block eighteen (18) of the Castanine Addition to the City of Houston, South Side of Buffalo Bayou.

NOW, THEREFORE, know all men by these presents, that I do hereby acknowledge that I hold and will hold said real property and all right, title and interest in and to said property and all furniture, fixtures and real and personal property therein, In Trust

1. For the use and benefit of Arthur L. Huckaby—whose address is 1717 Dowling Street Houston, Harris County, Texas.

Upon my death, my Successor Trustee is hereby directed fortwith [sic] to transfer said property and all right, title and interest in and to said property unto the beneficiary absolutely and terminate this trust.

2. I reserve unto myself the power and right (1) to place a mortgage or other lien upon the property, (2) to collect any rental or other income which may accrue from the trust property and,

in my sole discretion as trustee, either to accumulate such income as an addition to the trust assets being held or pay such income to myself as an individual.

3. I reserve unto myself the power and right at any time during my lifetime to amend or revoke in whole or in part the trust hereby created without the necessity of obtaining the consent of the beneficiary and without giving notice to the beneficiary. The sale or other disposition by me of the whole or any part of the property held hereunder shall constitute as to such whole or part a revocation of this trust.

4. The death during my lifetime, or the beneficiary designated hereunder shall revoke such designation; I reserve the right to designate a new beneficiary. Should I for any reason fail to designate such new beneficiary, this trust shall terminate upon my death and the trust property shall revert to my estate.

5. In the event of my death or legal incapacity, I hereby nominate and appoint as SUCCESSOR TRUSTEE: Arthur L. Huckaby—1717 Dowling Street Houston Harris County, Texas to be Successor Trustee.

6. This Declaration of Trust shall extend to and be binding upon the heirs, executors, administrators and assigns of the undersigned and upon the Successors to the Trustee.

*The Quitclaim Deed:*

KNOW ALL MEN BY THESE PRESENTS, that I, Virginia B. Miller in conformity with the terms of a certain Declaration of Trust executed by me under the date of 7 November, 1966, do by these presents release and forever quitclaim to myself as Trustee under the terms of Such Declaration of Trust, and to my successors as Trustee under the terms such Declaration of Trust, all right, title, interest, claim and demand whatsoever which I as Releasor have or

ought to have in or to the property located at:

Houston Harris County, Texas, known and described as Lot four (4), in Block eighteen (18) of the Castanine Addition SSS BB.

*To have and to Hold the premises,* with all the appurtenances, as such Trustee forever, and I declare and agree that neither as an individual nor my heirs or assigns shall have or make any claim or demand upon such property.

■ We granted the writ in this case upon points which urge that the extensive powers which the settlor reserved to herself made the trust declarations void, because they were illusory and testamentary in character and imposed no enforceable fiduciary duties upon anyone. Certainly paragraphs 2 and 3 of the trust declarations constitute broad reservations of power in the settlor. However, the court of civil appeals correctly held that an application of the illusory trust doctrine, as enunciated in Land v. Marshall, 426 S.W. 2d 841 (Tex.1968), is limited to instances in which a non-consenting spouse's property is used to fund a trust. Land v. Marshall dealt with a problem created by our community property protection of the wife's distributive share. We therefore could not look solely to the husband's reservation of powers over his own property but had to bring additional policy considerations to bear. Adopting the illusory trust doctrine, we held that the trust failed as to the wife's property. It was only after reaching this conclusion that we could invalidate the whole trust. Since the invalidating of one-half of the trust corpus was held to disrupt the trustor's plan, the entire trust scheme was aborted. The Marshall trust did not fail because the husband reserved too much control over his own property. See Johanson, Revocable Trusts and Community Property: The Substantive Problems, 47 Tex.L.Rev. 537, 544 (1968); Comment, The Illusory Trust and Community Property, 22 S.W.L.J. 447, 458–465 (1968).

In Land v. Marshall we cited a number of cases upholding the validity of trusts even though the settlor had retained extensive powers of control. 426 S.W.2d at 848. Additional support for the validity of such trust declarations may be found in Nickson v. Filtrol Corporation, 262 A.2d 267 (Del.Ch.1970); Farkas v. Williams, 5 Ill.2d 417, 125 N.E.2d 600 (1955); Ridge v. Bright, 244 N.C. 345, 93 S.E.2d 607 (1956); National Shawmut Bank of Boston v. Joy, 315 Mass. 457, 53 N.E.2d 113 (1944); Roberts v. Roberts, 286 F.2d 647 (9th Cir. 1961); Annot., 32 A.L.R.2d 1271 (1953); 89 C.J.S. Trusts § 47 (1955); Restatement (Second) of Trusts § 57 (1959).

■ Our question is whether Virginia B. Miller, dealing with her own property, could create valid trusts even though she reserved in herself broad beneficial rights, as well as the right to revoke the trusts and the right to control or manage the acts of the trustee. The trusts were not fatally defective by reason of her power to revoke them, because the Texas Trust Act has foreclosed that objection. Art. 7425b–41, Vernon's Ann.Tex.Civ.Stats. Land v. Marshall, 426 S.W.2d at 844. The trust act also permits the settlor to hold property as trustee for another, or for himself and another. Art. 7425b–7, Vern.Ann. Tex.Civ.Stats. See Restatement (Second) of Trusts §§ 17, 28, 57 (1959); 2 A. Scott, The Law of Trusts § 127.1 (3d ed. 1967).

If we should follow the rule advanced by the 1935 Restatement of Trusts,[1] we would strike down the Miller trusts. Since that earlier statement, however, there has been such a wide use of inter vivos trusts for a variety of reasons and such a marked shift in judicial decisions that the 1959 edition of the Restatement of Trusts has adopted a different rule as the better and the prevailing rule:

> Sec. 57. Disposition Inter Vivos Where Settlor Reserves Power to Revoke, Modify or Control.
>
> Where an interest in the trust property is created in a beneficiary other than the settlor, the disposition is not testamentary and invalid for failure to comply with the requirements of the Statute of Wills merely because the settlor reserves a beneficial life interest or because he reserves in addition a power to revoke the trust in whole or in part, and a power to modify the trust, and a power to control the trustee as to the administration of the trust.
>
> Comment b: Where settlor reserves power of control. Where the owner of property transfers it inter vivos to another person in trust, the fact that he reserves not only a power to revoke and modify the trust but also power to control the trustee as to the administration of the trust does not make the disposition testamentary and invalid for failure to comply with the requirements of the Statute of Wills.

Comment "h" of the same section recognizes that the trustee of a revocable inter vivos trust can be the settlor alone:

> Declaration of trust. The rule stated in this Section is applicable not only where the owner of property transfers it to another as trustee, but also where he declares himself trustee of the property. The disposition is not testamentary and invalid for failure to comply with the requirements of the Statute of Wills merely because the settlor-trustee reserves a beneficial life interest and power to revoke and modify the trust. The

---

1. Restatement of Trusts § 57(2) (1935). Where the settlor transfers property in trust and reserves not only a beneficial life estate and a power to revoke and modify the trust but also such power to control the trustee as to the details of the administration of the trust that the trustee is the agent of the settlor, the disposition so far as it is intended to take effect after his death is testamentary and is invalid unless the requirements of the statutes relating to the validity of wills are complied with.

fact that as trustee he controls the administration of the trust does not invalidate it.

Professor Bogert expresses the view that a majority of the cases now upholds the validity of an inter vivos trust even though the settlor reserves a life estate combined with many powers of management, and that the settlor may retain the powers to alter, revoke and take capital as well as the powers to direct and manage. According to Bogert, the beneficiary receives a defeasible interest at the time of the execution of the instrument; the accumulation of reserved powers only subjects the interest of the beneficiary to a greater possibility of defeasance. G. Bogert, Trusts and Trustees § 104 at 536–542 (2d ed. 1965). See Schmidt v. Schmidt, 261 S.W. 2d 892 (Tex.Civ.App.1953, writ ref.). Professor Scott says, "The trend of the modern authorities is to uphold an inter vivos trust no matter how extensive may be the powers over the administration of the trust reserved by the settlor." 1 A. Scott, The Law of Trusts § 57.2 at 485 (3d ed. 1967).

The fifth paragraph of the trust declarations is significant in expressing the settlor's scheme for her trusts. She stated in that provision, "I hereby nominate and appoint as successor trustee: Arthur L. Huckaby . . . ." In addition she provided that the successor trustee's powers and duties would arise "[i]n the event of my death or legal incapacity . . . ." The word, "hereby," means "by this, or the present, declaration, action, document, etc.; by means of this; as a result of this . . . ." Random House Dictionary of the English Language (1967). It indicates an act in praesenti. 39 C.J.S., Hereby at 892 (1944). Consequently, it is clear that Virginia Miller intended the trust to take effect immediately. The settlor gave further evidence of her intent to make her trust plan presently operative. After designating Arthur L. Huckaby as her successor trustee, she conveyed her property, in the same instrument, to herself as trustee and also to the successor trustee. See 1

A. Scott, The Law of Trusts § 26.2 (3d ed. 1967).

The settlor's plan was a good one. She would retain control during her competency, and, when she was no longer capable of tending to her property, one who was charged with fiduciary duties would assume the duty of caring for the property during the remainder of her life. She thus made present arrangements for any period of disability during her lifetime. This plan was operative prior to her death, not after or upon her death.

By her sixth paragraph the settlor provided that the declaration would be binding upon her heirs, executors, administrators and assigns as well as the successor trustee. She did not, however, grant to the successor trustee the broad powers which she reserved to herself as settlor. During her lifetime, the successor trustee would be charged with the duties owing by a trustee to the life beneficiary, who would be Virginia B. Miller. The successor trustee would, during the lifetime of the incompetent beneficiary, possess the powers and be subjected to the duties imposed by Art. 7425b–25, Vern.Ann.Tex.Civ. Stats. See Restatement (Second) of Trusts §§ 169–185 (1959). We are unable to say, therefore, that the trust declaration accomplished nothing until the event of the settlor's death.

■ A document which can stand as a trust is not rendered invalid because it avoids the need for a will. Good reasons often exist for a presently operative trust in preference to a will, which cannot be operative until death and which can accomplish nothing during lifetime. "If an owner of property can find a means of disposing of it inter vivos that will render a will unnecessary for the accomplishment of his practical purposes, he has a right to employ it. The fact that the motive of a transfer is to obtain the practical advantages of a will without making one is immaterial." National Shawmut Bank of Boston v. Joy, 315 Mass. 457, 471, 53

N.E.2d 113, 122 (1944). A settlor's business or property may be of such character that it cannot endure even a short period of suspension of operations between death and probate. See Notes, Use of Inter Vivos Trusts in Agricultural Estate Planning, 55 Iowa L.Rev. 1328 (1970). A settlor may wish to avoid the expense of administration, attorney fees or executor's fees. A settlor may, as did Virginia B. Miller, desire some fiduciary to take over the management of the trust corpus in the likely event of incompetency by reason of sickness or age. The reasons one might have for making a transition during lifetime are varied. Living trusts often afford better management, greater protection, more privacy and considerable economy. G. Bogert, Trusts and Trustees §§ 104, 264 (2d ed. 1965); Casner, Estate Planning—Avoidance of Probate, 60 Col.L.Rev. 108 (1960); Martin & Nicholson, The New Phenomenon: Settlor as Trustee of a Funded Living Trust, 110 Trusts and Estates 164 (1971); Meyer, Non-Tax Advantages of the Revocable Trust (With Emphasis on Use of Will Substitute), 37 Dicta 333 (1960); Miller, Advantages Available to Client and Counsel From Use of Inter Vivos and Testamentary Trusts, 29 Tex.Bar J. 1019 (1966).

We affirm the judgments of the courts below.

Dissenting opinion by STEAKLEY, J., in which WALKER, GREENHILL and DANIEL, JJ., join.

STEAKLEY, Justice (dissenting).

I am unable to join in judicially sanctioning a device which, to my mind, is no more, in substance, than a contrived use of the trust principle to effect a testamentary disposition during lifetime. In my view, the instruments executed by Virginia B. Miller were patently designed for distribution of her properties at death, and the transfers purportedly effected were not genuinely effective prior to her death. I recognize, of course, that a person may dispose of property while living by means of effective inter vivos transactions. But there can be no inter vivos trust when the legal and equitable ownership continues to rest in the settlor. This is the circumstance here when the instruments employed by Virginia B. Miller are viewed in their true effect. In the trust acknowledgments to herself, she expressly retained the plenary power and right to mortgage or otherwise encumber the properties; to receive and enjoy all income therefrom by reason of the reservation to herself as trustee of the right to accumulate the income or pay it to herself as an individual; to amend or revoke the trusts in whole or in part; and to designate a new beneficiary. She provided further that the sale or other disposition by her of the whole or any part of the properties would constitute a revocation of the trusts and that the death of the named beneficiary during her lifetime would revoke the designation. As trustee she did no more than hold the properties in name as such; she had no significant acts to perform, or responsibilities to discharge or discretion to exercise. See McMurray v. Stanley, 69 Tex. 227, 6 S.W. 412 (Tex.Sup.1887). There was nothing she could do as trustee that would constitute a breach of a fiduciary duty to anyone, including her death beneficiary. See Restatement (Second) of Trusts § 2 and § 25 (1959). Huckaby as the named beneficiary would enjoy a use and benefit only upon her death and then only if, prior thereto, a new beneficiary was not named, or the declarations were not revoked, or the properties were not sold or otherwise consumed.

The quitclaim deeds by which a present transfer was sought to be effected were operative only in conformity with and pursuant to the declarations of trust. Under the living trusts, Virginia B. Miller was settlor, beneficiary and trustee. The cumulative effect of the powers and rights retained by her is such that there was no separation of the legal and equitable interests in the properties during her lifetime.

She retained beneficial ownership notwithstanding the seeming conveyances, and each transaction was a ceremony without present substance, an act that was meaningless in effect and hence a nullity. See Annot., 32 A.L.R.2d 1270 (1953).

The majority professes to find a presently operative trust plan in the naked designation of Huckaby as successor trustee in event of legal incapacity. It says that this "indicates an act in praesenti." But two features of the successor trustee designation are quite obvious: the contingency upon which it rests may never occur; and there are no directions to the successor trustee indicative of the wishes of the so-called settlor in the administration of the trust should she become incompetent. This is too frail to constitute a lifetime disposition and too slender a thread with which to validate and hold together the otherwise ineffective inter vivos transactions.

The device under review is comparable in effect to a living trust where one person is named sole beneficiary and sole trustee. The assets are held free of any trust under these circumstances. It is as stated in the Restatement (Second) of Trusts § 99, comment 5 (1959):

[T]here are no duties running from himself to himself, and no rights against himself. He is in a position where he can dispose of the property as freely as any owner can do, since there is no one who can maintain a proceeding against him to prevent him from so doing, and if he transfers the property there is no one who can make him accountable for the proceeds or can reach the property in the hands of the transferee.

The court of appeals in Betker v. Nalley, 78 U.S.App.D.C. 312, 140 F.2d 171 (1944), considered a deed in trust of similar effect except that the owner was not named as trustee. The court said:

It is significant that no duty is specified, in the deed of June, 1930, to be performed by the trustees during the lifetime of the grantor, except to *hold* the two parcels. Moreover, this holding was to be for her use and benefit. * * *

The only thing the grantor parted with irrevocably was the remainder of the trust property, if there should be any remainder after her death; and the only possibility that any discretion or power might have to be exercised by her trustees after her death arose from the possibility that she might elect not to dispose of the entire trust property before her death. Even in that event they were to be mere channels through which title would flow for the purpose of distribution. It seems obvious, therefore, that the deed of June, 1930, was ineffective to create a trust.

I am not unmindful of the provision in the Texas Trust Act, Tex.Rev.Civ.Stat.Ann. Art. 7425b–7 (1960), that an owner of property may declare in writing that he holds it as trustee for another person; and that revocable declarations of trusts are recognized as valid under the law of our State. But as pointed out by Professor Johanson, the statutes do not reach the issue of whether a trust will be recognized if the settlor—trustee reserves broad controls exercisable either in his capacity as settlor or as trustee. Johanson, Revocable Trusts and Community Property: The Substantive Problems, 47 Tex.L.Rev. 537 footnote 71 at 556 (1969). Clearly, the provisions of the Texas Trust Act are not a mandate for validation of all arrangements in such form, and judicial sanction should not be given to an arrangement without substance or effect as an inter vivos transfer.

I would declare the instruments of no force and effect.

WALKER, GREENHILL and DANIEL, JJ., join in this dissent.